IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CADLE COMPANY, | § | |
| | § | |
| Appellant, | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | 3:08-CV-1114-K |
| JEFFREY H. MIMS, TRUSTEE, et al., | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Appellant The Cadle Company ("Cadle") appeals the bankruptcy court's Findings of Fact, Conclusions of Law, and Order entered April 15, 2008. In that order, the bankruptcy court approved the Trustee's Motion for Order Approving Settlement Agreements in Case No. 06-31859-SGJ-7. Cadle appealed, claiming that the bankruptcy court improperly approved the settlement over its objection.

### I.   Factual and Procedural Background

Debtor James H. Moore, III, lost millions of dollars on various real estate ventures in the 1980s and 90s, resulting in various judgments against him. Cadle became a creditor by purchasing the rights to two judgments, totaling some $12 million. In 2005, Cadle filed a lawsuit against Moore, his wife Elizabeth Moore (collectively "the Moores"); JHM Properties, Inc. ("JHMPI"), and Brunswick Properties, LLC ("Brunswick") in Dallas County, Texas. In the suit, Cadle asserted that JHMPI, owned

by Mrs. Moore, and Brunswick, which in turn was half-owned by JHMPI, were alter egos of Moore and sought to access their assets to satisfy its judgments.

In 2006, Moore filed a Chapter 7 bankruptcy petition in the Northern District of Texas, Case No. 06-31859, and Jeffrey H. Mims ("Mims") was appointed trustee. The state court lawsuit became an asset of Moore's bankruptcy estate when he filed the case. Cadle removed the state court suit to the bankruptcy court as an adversary action, No. 06-3417. Mims, as trustee, substituted as plaintiff in the removed proceeding. The trustee retained Cadle's attorneys as special counsel.

Although the Trustee controlled the adversary litigation, Cadle financed it. After bills mounted, Cadle offered to buy the rights to the litigation in January 2007 for $10,000. The Trustee rejected the offer and counteroffered at $150,000 plus 10 percent of any gross recovery. Cadle upped its offer to $15,000 in response, but Mims declined. In May 2007, Mims requested Cadle fund an expert witness, like a forensic accountant, for the case. Cadle declined, citing the potential unknown cost.

Mims, the trustee, returned to negotiations with the Defendants and reached a settlement. Mims moved for approval to settle his claims in the adversary proceeding against the Moores, JHM, and Brunswick. The compromise, as proposed, would have the Moores and JHM pay the estate $35,000, with Brunswick paying an additional $2,500. All parties would be released upon court approval.

Cadle, the largest creditor of the estate with a claim that it states represents about 86 percent of the unsecured debt, objected and asserted that it had made an offer of $50,000 to acquire the rights to the litigation. The offer was made two weeks after the Trustee filed his motion to compromise. Cadle argued that its offer was more beneficial to the estate, and thus the creditors, and therefore the compromise was not in the best interest of the estate.

After two hearings, the bankruptcy court approved the settlement on April 15, 2008. Appellant Cadle raises two issues on appeal: whether the bankruptcy court erred in approving the settlement agreements and whether the bankruptcy court erred in failing to order an auction of the claims prior to approving the settlements.

## II.   Standard of Review

In reviewing a decision of the bankruptcy court, this Court functions as an appellate court, applying the standards of review generally applied in federal court appeals. *See Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992); *Matter of Coston*, 991 F.2d 257, 261 n.3 (5th Cir. 1993) (en banc) (citing *Matter of Hipp, Inc.*, 895 F.2d 1503, 1517 (5th Cir. 1990)). Conclusions of law are reviewed *de novo*, while findings of fact, whether based on oral or documentary evidence, are not to be set aside unless clearly erroneous. *See* Bankruptcy Rule 8013; *see also Matter of Herby's Foods, Inc.*, 2 F.3d 128, 130-31 (5th Cir. 1993). A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm conviction

...

that a mistake has been made." *Id*.; *Matter of Allison*, 960 F.2d 481, 483 (5th Cir. 1992). In conducting its review, the Court remains "particularly mindful of the opportunity of the bankruptcy judge to determine the credibility of the witnesses." *Matter of Young*, 995 F.2d 547, 548 (5th Cir. 1993) (quoting Rule 8013).

    **III.   Analysis**

In reviewing a settlement agreement, a bankruptcy judge must compare the "terms of the compromise with the likely rewards of litigation." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 425 (1968). The judge must evaluate and set forth in a comprehensible fashion: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (3) all other factors bearing on the wisdom of the compromise. *Id.* at 424–25.

The Trustee's claims involved alter ego, reverse alter ego, fraudulent conveyance, and constructive trust claims. The bankruptcy court found "that the reverse veil-piercing theory is unique and not as well-grounded in Texas law as some authority has suggested . . . ."

"Moreover," the bankruptcy court found, "the duration of the litigation would no doubt be lengthy." The bankruptcy court found a likely multiple-day trial and an appeal

to the Fifth Circuit would ensue. The result would be expensive, lengthy litigation with a "very speculative" likelihood of collecting any judgment.

Thus, the bankruptcy court found that the extra $12,500 Cadle offered "would result in no enhanced dividend to prepetition creditors of this estate." The bankruptcy court noted that about fifteen other creditors voiced no opposition to the compromise, including Brunswick, which asserts its own $12 million claim for indemnity against the estate should the reverse alter ego claim succeed against it. The court noted that Brunswick's potential creditor claim was another factor in the overall consideration of the interests of the estate's creditors.

"This Court does not believe that in a Chapter 7 a trustee can peddle or sell Chapter 5 causes of action . . . ." Further, the court stated, it "does not believe a Chapter 7 trustee can sell to a third party where there is going to be no benefit to the estate from any recovery in the Chapter 5 cause of action." Similarly, the court was "not persuaded that the *alter ego* or veil-piercing remedy is something that can be peddled by a Chapter 7 trustee, any more than a Chapter 5 cause of action."

In sum, the bankruptcy court found this a "muddy area" and the outcome of potential litigation was highly uncertain. The court also noted that the Debtors' discharge was denied, so "this is not a situation where an objecting creditor is going to be foreclosed of any possibility of receiving any recovery as a result of this settlement."

Appellant Cadle's argument boils down to a complaint that the bankruptcy court erred in exercising its discretion to approve the settlements . Cadle points this Court to a decision by the Ninth Circuit Bankruptcy Appellate Panel that it asserts demands reversal of the bankruptcy court's approval of the settlement. *See In re Mickey Thompson Entm't Group*, 292 B.R. 415 (B.A.P. 9th Cir. 2003). In *Mickey Thompson*, the appellate panel

> When confronted with a motion to approve a settlement under Rule 9019(a), bankruptcy court is obliged to consider, as part of the "fair and equitable" analysis, whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale.

*Id.* at 421–22. Yet, "[w]hether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation." *Id.* at 422.

Numerous courts have "readily adopted the reasoning in *Mickey Thompson Entertainment*," Appellant states, citing cases in various jurisdictions. *See In re Scheurman*, No. 07-31745, 2008 WL 336393 (Bankr. N.D. Ohio Feb. 5, 2008); *In re Lahijani*, 325 B.R. 282 (B.A.P. 9th Cir. 2005); *In re WBW*, No. 03-02387-TLM (Bankr. D. Idaho Sept. 8, 2005); *In re Schugg*, No. CV-05-4158-PHX-JAT, 2006 WL 1455568 (D. Ariz. 2006).

Appellees respond that the *Mickey Thompson* opinion is a minority position. Notably, Appellant cites no cases in the Fifth Circuit that reference the *Mickey Thompson* decision, and three of the four cases it relies upon to show precedential value come from

within the Ninth Circuit itself. This Court found only two other cases outside the circuit of origin citing the case. *In re Ramsey*, 356 B.R. 217, 226 (Bankr. D. Kan. 2006); *In re Key3Media Group, Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005).

Appellant Cadle effectively asks the Court to give it the power to veto any settlement. The record shows Cadle could have purchased the claim earlier in the process, but instead chose to offer far less than the ultimate settlement amount until *after* the settlement was negotiated and the Trustee moved for approval. Cadle's position would allow it to wait until a settlement agreement is reached, swoop in with a slightly better offer—maybe even one dollar more—and jeopardize the resolution of claims.

The Court is unpersuaded by the *Mickey Thompson* case. Even adopting Appellant's position that *Mickey Thompson* is controlling, the Court would find that "[w]hether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation." *In re Mickey Thompson*, 292 B.R. at 422. A bankruptcy court abuses its discretion in approving a settlement when it relies on an erroneous view of the law or on clearly erroneous factual findings. FED. R. BANKR. P. 8013 & 9019.

> Discretion:
>
> denotes the absence of a hard and fast rule. When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.

*United States v. AWECO, Inc.* (*In re AWECO, Inc.*), 725 F.2d 293, 297 (5th Cir. 1984) (quoting *Langnes v. Greene*, 282 U.S. 531, 541 (1931)).  The bankruptcy court, which engaged in detailed fact-finding, analyzed the applicable law, and balanced the dynamics of the particular situation, in its discretion properly approved the settlement motion.

## IV. Conclusion

After review of the bankruptcy court record, the briefs of the parties, and the applicable law, the Court concludes that the bankruptcy court's findings of fact are not clearly erroneous, and its conclusions of law are correct.  Accordingly, the Court finds no reversible error, and the decision of the bankruptcy court is **AFFIRMED**.  The Clerk is hereby directed to prepare, sign and enter the judgment pursuant to Bankruptcy Rule 8016(a).

**SO ORDERED**.

March 26th, 2009.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE